IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SCOTT CROUCH, <br><br> Plaintiff, <br><br> vs. <br><br> BRASE ELECTRICAL CONTRACTING CORPORATION, A Nebraska Corporation; and STEVEN H. BRASE, <br><br> Defendants. | 4:11CV3105 <br><br> **MEMORANDUM AND ORDER** |

This matter is before the court on the parties' cross-motions for summary judgment. For the reasons set forth below, Plaintiff's motion for summary judgment will be denied and Defendants' motion for summary judgment will be granted.

PROCEDURAL BACKGROUND

This action was instituted in the District Court of Douglas County, Nebraska on June 22, 2011. The Complaint alleges Brase Electrical Contracting Corp. ("Brase Electrical") and Steven Brase ("Brase") are jointly and severally liable on several state law theories of recovery, including breach of contract, fraud, and conversion, because Brase and Brase Electrical have denied plaintiff's request to withdraw funds from his retirement account ("Crouch's Account") within the Brase Electrical Contracting Corporation Retirement Plan (the "Retirement Plan"). Filing No. 1-1, ¶¶ 11-14. Defendants removed the matter to federal court asserting the Retirement Plan is an ERISA-regulated employee benefit plan and ERISA's civil enforcement scheme completely preempts all state-law claims. Plaintiff did not object to the removal of the case from the District Court of Douglas County, Nebraska.

The parties have filed cross-motions for summary judgment. Plaintiff asserts that under the plain wording of the Retirement Plan he is entitled to withdraw the balance of his account, or in the alternative, at least the portion of funds he contributed while he was employed by Brase Electrical. Defendants argue that Plaintiff's claims should be dismissed because each of the claims is based on Nebraska state law and the ERISA civil enforcement scheme preempts the state law claims. Further, Defendants assert the Retirement Plan does not allow for any withdrawals of the funds in Crouch's Account absent a showing Crouch is completely disabled or has reached the mandatory retirement age set forth under the terms of the Retirement Plan.

STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. See Dancy v. Hyster Co., 127 F.3d 649, 652-53 (8th Cir. 1997). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. See Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999) .

The moving party bears the burden of showing there are no genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)) (internal marks omitted).

## UNDISPUTED FACTS

1.      Brase Electrical is a Nebraska corporation, in good standing, and authorized to do business in Omaha, Nebraska. Filing No. 1-1, ¶2.

2.      Steven Brase is a resident of Nebraska and the president of Brase Electrical. Filing No. 1-1, ¶3.

3.      On or about October 1, 1988, Brase Electrical started the Brase Electrical Contracting Corporation Retirement Plan (the "Retirement Plan"), through which Brase Electrical offered tax-advantaged retirement savings to its employees. Filing No. 1-1, ¶5.

4.      Brase Electrical is identified as the "Plan Administrator" in the Brase Electrical Summary Plan Document ("SPD"). Filing No. 21-5, p.22.

5.      Defendant Scott Crouch was employed with Brase Electrical for approximately 23 years beginning in 1986 and ending on August 5, 2009. Filing No. 1-1, ¶6.

6.      During Crouch's employment with Brase Electrical, both he and the company made contributions to Crouch's Account within the Retirement Plan. Filing No. 1-1, ¶6. Crouch's account is now fully vested, as defined by the Retirement Plan.

7.      At the time Crouch's employment with Brase Electrical ended, the Plan consisted of the following documents: (1) the Principal Financial Group Prototype Basic Savings Plan, Basic Plan No. 2 (the "Basic Savings Plan"), and (2) the Adoption

Agreement Plan No. 001 (the "Adoption Agreement"). The Retirement Plan also had an Employee Retirement Income Security Act ("ERISA") complaint SPD. Filing No. 21-1, ¶¶ 4-7.

8. The Retirement Plan includes, among other things, terms governing withdrawal of Retirement Account funds by current and former plan participants. Filing Nos. 21-3, -4, & -5.

9. On or about January 24, 2011, Crouch submitted a letter to Brase Electrical and Brase, informing Brase that Crouch was experiencing financial difficulty and requesting a withdrawal of funds from Crouch's retirement account maintained under the Retirement Plan. Filing No. 1-1, ¶¶8-9 & Filing No. 21-6. Crouch based his request on "hardship withdrawal" provisions he believed were allowed under the terms of the Retirement Plan. See Filing No. 21-6. Crouch did not assert he was disabled or that he had reached the mandatory retirement age under the terms of the Retirement Plan.

10. On or about January 28, 2011, Brase, acting in his capacity as President of Brase Electrical, informed Crouch in writing that the terms and provisions of the Retirement Plan did not permit the early withdrawal of Crouch's funds. Crouch's withdrawal request was denied. Filing No. 21-7. Specifically, Brase indicated that the "financial hardship withdrawals" provision had been removed from the Retirement Plan in 2001, and financial hardship withdrawals were no longer available under the Retirement Plan controlling Crouch's account. Filing No. 21-7.

4

LEGAL ANALYSIS

A.   **ERISA Plan**

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983). ERISA controls the participation, funding, vesting and payment terms of pension plans. "As part of the closely integrated regulatory system, Congress included various safeguards to preclude abuse and 'to completely secure the rights and expectations brought into being' " by ERISA. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137 (1990)(quoting S.Rep. No. 93-127, p. 36 (1973)). In order to help secure the rights of pension plan participants, ERISA contains a comprehensive civil enforcement scheme. See 29 U.S.C.A. § 1132. ERISA's civil enforcement provisions allow a "participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C.A. § 1132(1)(B).

Under federal law, state law[1] claims are preempted if the claims "relate to" an employee benefit plan within the meaning of ERISA. See 29 U.S.C. § 1144(a). The ERISA preemption provision is expansive and state law may "relate to" ERISA "even if the state law was not designed to affect a benefit plan and its effect on such plans is incidental." Johnston v. Paul Revere Life Ins. Co., 241 F.3d 623, 629-30 (8th Cir. 2001)(citing Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990)).

A state law "relates to" an employee benefit plan under ERISA if it (1) expressly refers to, or (2) has a connection to such a plan. Eckelkamp v. Beste, 315 F.3d 863, 870

---

[1] "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C.A.§ 1144 (c)(1).

5

(8th Cir. 2002). "Given ERISA's broad pre-emption, state law claims for improper plan administration are pre-empted." Consolidated Beef-Industries, Inc. v. New York Life Ins. Co., 949 F.2d 960, 963 (8th Cir. 1991)(ERISA preempts claims for inaccurate billings and lack of annual statements); see also Travelers Cas. and Sur. Co. of America v. IADA Services, Inc., 497 F.3d 862, 867-68 (8th Cir. 2007)(ERISA preempts state-law claims arising from breaches of duties by a fiduciary in an ERISA-regulated plan); Estes v. Federal Express Corp., 417 F.3d 870, 872 (8th Cir. 2005)(challenge to the termination of long-term disability benefits depending on interpretation of ERISA contract and state law claim was preempted); Johnson v. U.S. Bancorp., 387 F.3d 939, 942 (8th Cir. 2004)(state law claim for breach of contract was preempted by ERISA for plaintiff claiming former employer wrongly withheld payment of benefits); Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1215 (8th Cir. 1981)(ERISA preempts a state law claim for tortious interference with an ERISA contract).

Although the Plaintiff has never expressly stipulated that the Retirement Plan in this case is an employee benefit plan subject to federal regulation under ERISA, Plaintiff has apparently conceded the issue. The plaintiff has not refuted Defendants' assertion that ERISA applies, and did not object to the removal of the case from state court based on ERISA preemption. The plaintiff summary judgment motion does not dispute Defendants' assertion that the Retirement Plan is governed by ERISA.

The court has reviewed the Retirement Plan's supporting documents and finds the plan documentation clearly corroborates Defendants' contention that the terms of Retirement Plan are subject to ERISA. See Filing No. 21-5, pp. 16-21. The Retirement Plan at issue in this case is an ERISA retirement plan.

## B. ERISA Preemption

Having concluded the Retirement Plan is governed by ERISA, the court next must determine whether Plaintiff's state law claims are preempted by the civil remedies found in ERISA. All of Plaintiff's claims arise out of or are directly related to the interpretation and administration of the Retirement Plan. The claims for breach of contract, conversion, and fraud are a direct result of Defendants' alleged misinterpretation or alleged misapplication of the terms of the Retirement Plan. That is, Plaintiff is asserting Defendants have wrongfully withheld payments from Crouch's Account without proper justification under the controlling documents. Plaintiff's entire argument is predicated on interpreting key provisions in the Retirement Plan and the SPD. Under such circumstances, ERISA clearly preempts the state law claims in this case. See Johnson, 387 F.3d at 942 (8th Cir. 2004)(state law claim for breach of contract was preempted by ERISA when plaintiff claimed a former employer wrongly withheld payment of benefits); Consolidated Beef-Industries, Inc., 949 F.2d at 963 (state law claims for improper plan administration are preempted by ERISA).

ERISA provides a remedy for the very type of harm Plaintiff has allegedly suffered. To wit, a plaintiff may assert a claim under federal law "to recover benefits due to him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C.A. § 1132(1)(B). All of Plaintiff's claim relate directly to Defendants' alleged misinterpretations or wrongful application of the Retirement Plan. Accordingly, the plaintiff's state law claims are preempted by ERISA.

7

### C. ERISA Claims

#### 1. ERISA--The Well-Pleaded Complaint Rule.

The defendants argue dismissal is warranted because the plaintiff's complaint alleges state law theories, and not an ERISA claim for recovery. However, " 'well-pleaded facts, not legal theories or conclusions, determine the adequacy of the complaint.' " Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009) (internal citations omitted). That is, the failure to mention a specific legal theory of recovery is not always fatal to claim. The key question to be answered is whether the facts alleged in the complaint "raise a right to relief above the speculative level." Id.

The Eighth Circuit has addressed this principle in the context of ERISA litigation. See Vickery v. United Medical Resources, Inc., 43 F.3d 1208 (8th Cir. 1994). Vickery involved a dispute over the payment of medical bills under an employee benefit plan administered by defendant UMR. The initial complaint, filed in Missouri state court, sought recovery from UMR for the payment of the medical bills. However, the complaint did not specifically invoke ERISA. UMR removed the case to federal court, asserting that the claims were governed by ERISA, and moved for summary judgment arguing ERISA preempted all of the state law claims. The district court agreed, finding the plan at issue was controlled by ERISA, and judgment for the defendant was appropriate because the plaintiff did not specifically assert an ERISA claim.

Vickery reversed the district court's ruling, finding that despite the plaintiff's failure to specifically cite to ERISA, the allegations in the complaint specifically asserted that the plaintiff was wrongfully denied benefits under the health insurance plan administered by UMR. The court found those allegations were "adequate to invoke ERISA and notify UMR of the basis for the [plaintiff's] claims." Vickery, 43 F.3d at

1209. The Vickery court went on to note that the defendant had specifically cited ERISA when it sought to remove the case to federal court. Under such circumstances, "it would be overly formulistic to hold the [plaintiffs] have failed to state a claim under ERISA." Id. (internal citations omitted).

The plaintiff's complaint provides ample notice that the plaintiff is seeking recovery from Brase Electrical and Brase for denying a request to withdraw Retirement Plan funds. Although Plaintiff has not specifically invoked ERISA in the language of his complaint, he clearly alleges that Defendants have wrongfully withheld retirement benefits due him under the terms of the Retirement Plan. See Filing No. 1-1, ¶¶ 11-13. All of the counts in Plaintiff's complaint reference the Retirement Plan as it relates to Crouch's Account.

Moreover, like the defendants in Vickery, Defendants relied upon ERISA to remove the case to this court and now argue the complaint does not state a claim under ERISA. Such an interpretation by the court would indeed by "overly formulistic" and would violate the principle that well-pleaded facts and not legal theories control the adequacy of a complaint. Vickery, 43 F.3d at 1209; see also Jordan v. Aetna Life Ins. Co., Case No. 4:11cv365, 2012 WL 274693 (E.D. Mo. Jan. 31, 2012) (allegations in the complaint were sufficient to raise an ERISA claim even when not specifically pled by the plaintiff).

Accordingly, although the plaintiff's complaint never mentions ERISA, the Complaint contains the necessary factual allegations to state a claim under ERISA and specifically under 29 U.S.C. § 1132(1)(B). Vickery, 43 F.3d at 1209. Having concluded the Plaintiff has properly asserted a claim for wrongful denial of ERISA benefits, the court must address the merits of the case.

2.	The Merits of Plaintiff's Claim for ERISA benefits.

a)	ERISA Standard of Review.

The Retirement Plan provides the administrator with discretionary power to construe any ambiguous terms and otherwise interpret the provisions of the Retirement Plan. Filing No. 21-3, §9.07. Because the administrator has been granted discretionary authority to interpret the provisions of the Retirement Plan, the court will review the administrator's decisions for abuse of discretion. Hankins v. Standard Ins. Co., 677 F.3d 830, 834 (8th Cir. 2012). Factors the court considers when determining whether ERISA administrators have abused their discretion include:

> whether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language in the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan.

Id. (quoting Finley v. Special Agents Mut. Benefit Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992)). When the plan administrator is both the decision-maker and the insurer, as in this case, the administrator has a conflict of interest that must also be taken into account and given some weight in determining whether the administrator has abused its discretion. Hankins, 677 F.3d at 837 (internal citations omitted). A conflict of interest alone is not determinative, but is one factor to be considered in evaluating whether the plan administrator has abused its discretion in denying benefits. Id. a 837. Where the plan administrator advances a "reasonable interpretation" of disputed provisions "courts may not replace [it] with an interpretation of their own." King v. Hartford Life and Acc. Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005).

b)    Right to Recovery under the Terms of the Retirement Plan.

The Retirement Plan consists of two primary documents: (1) the Basic Savings Plan and (2) the Adoption Agreement. The Basic Savings Plan sets forth the general terms of Retirement Plan. The Adoption Agreement lists a variety of possible additions, modifications, and/or amendments to the Basic Savings Plan that could be selected and integrated into the Basic Savings Plan. Thus, the two documents and their provisions, read together, constitute the terms of the Retirement Plan. The SPD provides a summary of the terms of Retirement Plan.

Brase, acting in his capacity as president of Brase Electrical, denied Crouch's request to withdraw the balance of his retirement account. Crouch made a request for a withdrawal based on a financial hardship he was experiencing at the time of his requested withdrawal. Crouch believed provisions in the Retirement Plan allowed for withdrawals under such circumstances. Brase denied that request informing Crouch that the provision regarding hardship withdrawals had been removed from the Retirement Plan in 2001. Neither party has submitted other evidence detailing any additional withdrawal requests, although Crouch submitted an affidavit stating he made "numerous" requests for the withdrawal of his vested funds. Filing No. 23-1, ¶11.

Apparently conceding that the terms of the Retirement Plan no longer allow for "hardship withdrawals," Plaintiff argues that other sections of the Retirement Plan and the SPD allow for withdrawal of his vested funds. Specifically, he points to Section Y of the Adoption Agreement and Part 5 of the SPD. Conversely, Defendants argue neither of those provisions allows for Crouch's requested withdrawal. In addition, Defendants point to Section Z(6)(a) of the Adoption Agreement to support their claim that Crouch was not entitled to benefits under the terms of the Retirement Plan.

11

Having reviewed the relevant documents, the court cannot find Brase, acting in his capacity as president of Brase Electrical, abused his discretion in interpreting the Retirement Plan to preclude Crouch from withdrawing his funds before he reached retirement age. Section 5.03 of the Basic Savings Plan addresses when a terminated employee may withdraw his vested funds from the Plan:

> If an Inactive Participant's Vested Account is not payable under the provisions of Section 10.11, he may elect, but is not required, to receive a distribution of any part of his Vested Account after he has a Severance from Employment. If Item Z(6)(a) is selected, distributions from the Participant's Vested Account which result from the designated Contributions shall not begin before the Participant becomes Totally Disabled. If Item Z(6)(b) is selected, distributions from the Participant's Vested Account which result from the designated Contributions shall not be made until he has had a Severance from Employment for the period of time specified. If Item AA(1) is selected, the Participant's election shall be subject to his spouse's consent as provided in Section 6.03. A distribution under this paragraph shall be a retirement benefit and shall be distributed to the Participant according to the distribution of benefits provisions of Article VI or VIA, whichever applies.

Filing No. 21-3, §5.03.

Section Z(6)(a) is found in the Adoption Agreement and allows for the modification of section 5.03 of the Basic Savings Plan. Section Z(6)(a) provides:

> 6) VESTED BENEFIT MODIFICATIONS. Plan Section 5.03 permits an Inactive Participant to elect to start benefits after he has a Severance from Employment. The start of benefits is modified as follows: *(Select* (a) *or (b), if applicable.)*
>
> a)     [X] An Inactive Participant cannot elect to receive benefit payments from that part of his Vested Account resulting from Elective Deferral Contributions, Matching Contributions, Qualified Nonelective Contributions, Additional Contributions, and Discretionary Contributions before he becomes Totally Disabled

>   (Retirement Date or death, if earlier). A small Vested Account, as defined in Plan Section 10.11, shall be paid earlier in a single sum. *(Select (0, if applicable.)*
>
>   i) [ ] Such restriction shall not apply to that part of an Inactive Participant's Vested Account resulting from Elective Deferral Contributions.

Filing No. 21-4, Item Z(6)(a).

There is no question Crouch is an "Inactive Participant"[2] under the terms of the Retirement Plan. Under Brase's proposed interpretation of these provisions of the Retirement Plan, Crouch is precluded from receiving an early withdrawal of his account funds. That is, although Section 5.03 of the Basic Savings Plan allows an Inactive Participant to receive a distribution from his or her account after employment termination, Section 5.03 is limited by Section Z(6)(a) of the Adoption Agreement. Section Z(6)(a) places a limit on the source of the funds from which an Inactive Participant can withdraw. That is, an Inactive Participant cannot withdraw from his Vested Account those funds which were generated from "Elective Deferral Contributions, Matching Contributions, Qualified Nonelective Contributions, Additional Contributions, and Discretionary Contributions." Each of these types of contributions is specifically defined in the Retirement Plan.

Defendants assert that all of the funds in Crouch's vested account were the product of one of the categories specifically identified in Section Z(6)(a). For instance, Defendants assert all of Crouch's voluntary contributions to his account were in the form of Elective Deferral Contributions and, therefore, are not available for withdrawal until Crouch reaches the designated retirement age or becomes totally disabled. Crouch has

---

[2] An Inactive Participant is defined as a "former Active Participant who has an Account." Filing No. 21-3, p. 9. That is, a former employee who participated in the Retirement Plan and still has an account. Crouch clearly falls into this category.

not disputed his contributions were in the form of Elective Deferral Contributions and has provided no evidence that his contributions and account are not governed by, and subject to, Section Z(6)(a).

Crouch advances at least two alternative theories for why he is entitled to receive the proceeds of his account under the terms of the Retirement Plan. First he points to Section Y of the Adoption Agreement which provides that a participant may withdraw "any part of his Vested Account resulting from Voluntary Contributions." Crouch argues that all of his contributions are "voluntary" and he should be allowed to withdraw those funds. However, Crouch's proposed interpretation ignores the Retirement Plan terms. Voluntary Contributions are expressly defined as "Contributions by a Participant that are 100% vested when made to the Plan and are not required as a condition of employment or participation, or for obtaining additional Employer Contributions." Filing No. 21-3, p. 18. That is, Voluntary Contributions are not merely contributions made of the participant's own free will. Rather, they have a specific meaning within the terms of the Retirement Plan and Crouch has provided no evidence that any of his contributions qualified as "Voluntary Contributions." There is likely a good reason why Crouch has not suggested any of his contributions were "Voluntary Contributions" as defined by the Retirement Plan – the language of the Retirement Plan expressly forbids "Voluntary Contributions" pursuant to the Adoption Agreement, Section T(1) which provides "Voluntary Contributions are not permitted, unless otherwise specified in [subsection] (a) below." None of the boxes in subsection (a) of the Adoption Agreement is selected, thus "Voluntary Contributions" were not permitted under any circumstances.

Crouch also suggests language in the SPD supports his contention that he should be allowed to withdraw the funds from his account. Specifically he refers to Part 5 of the Plan Summary which provides:

> **At Termination or Retirement**
>
> If your vested account is $5,000 or less, your vested account will be paid to you in a single sum. Federal law requires the plan to automatically roll your vested account to an IRA in a direct rollover (see Part 6) if:
>
> - your vested account is more than $1,000
> - you have not reached age 65
> - you do not elect to have your vested account paid to you in a single sum or rolled to another retirement plan or an IRA of your choice in a direct rollover
>
> For more information regarding the designated IRA for automatic rollovers, see Part 7.
>
> If your vested account is more than $5,000, you may choose from the forms of benefit described in Forms to Choose below.

Filing No. 21-5, Part 5, p. 12.

Crouch argues that this provision allows him to take a lump sum withdrawal because he is no longer working for Brase Electrical.  Although it is not abundantly clear to the Court, Crouch may be relying on the language of Part 5 of the Adoption Agreement that states federal law requires a direct rollover if the participant "do[es] not elect to have [his] vested account paid . . . in a single sum . . . ."  This extremely tenuous argument is easily defeated by an examination of the plain terms of the SPD.  The SPD provides that if a vested account exceeds $5,000, the participant may choose from the forms of benefits payments described in Part 5 of the Adoption Agreement under the "Forms to Choose" heading.  Filing No. 21-5, Part 5, p. 12.   The "Forms to Choose" portion of the Adoption Agreement provides:

> A single sum payment. However, you may not choose to have that part of your vested account from your 401 (k) elective deferral contributions and our contributions paid to you in a single sum before your retirement date unless you become totally disabled, as defined in the plan.

15

Filing No. 21-5, Part 5, p. 15.

This section is consistent with the terms of the Basic Savings Plan and clearly provides that a participant is not entitled to a single sum payment from his elective deferral contributions or from the contributions made by Brase Electrical. Crouch makes no attempt to explain why the "Forms to Choose" provision does not override any ability he has to withdraw his fully vested funds and the court can find no reason why this section does not provide Brase Electrical with the authority to decline Crouch's request for withdrawal of funds. Thus, even assuming the SPD has any controlling weight over the terms and operation of the Retirement Plan, an interpretation by Defendants that Crouch is not entitled to a withdrawal of benefits is not an abuse of discretion.

In summary, applying the factors set forth in Hankins, the court cannot find Brase Electrical abused its discretion in interpreting and applying the terms of the Retirement Plan and denying Crouch's request to withdraw his funds. Brase Electrical's interpretation is consistent with the stated goals of the Retirement Plan – to help provide retirement income for the Retirement Plan participants. Brase Electrical's interpretation is completely consistent with the plain language of the Retirement Plan and there is no evidence Brase Electrical has ever interpreted the document in a manner inconsistent with its current interpretation. In short, even accounting for the fact that Brase Electrical and Brase, acting in his capacity as president, have a conflict of interest, there simply is not enough evidence to find the Defendants abused their discretion when, based on their interpretation and application of the Retirement Plan provisions, they denied Crouch's request to withdraw funds from Crouch's account in the Retirement Plan.

c) Right to "Appropriate Equitable Relief" under ERISA.

Finally, Plaintiff appeals to the court's equitable power to order the release of his Retirement Plan account funds. ERISA does allow plaintiffs to seek "appropriate equitable relief" for civil claims. See 20 U.S.C. § 1132(a)(3). The Eighth Circuit has found "appropriate equitable relief" is only appropriate for the "purpose of . . . enforcing any provisions of ERISA or an ERISA plan" and not to provide equitable relief at large. Administrative Committee of Wal-Mart Stores, Inc. Assoc. Health and Welfare Plan v. Shank, 500 F.3d 834, 838 (8th Cir. 2007) (internal citations omitted).

Reading Plaintiff's complaint and brief in support of his motion for summary judgment very liberally, his argument for the court to exercise its "inherent equitable powers" could be construed as a request for "appropriate equitable relief" under ERISA. However, that claim fails as a matter of law based on the plain language of the Retirement Plan. Id. at 838-39 (noting nothing in ERISA suggests "Congress intended that the right to an equitable relief would "upset [the] contractually-defined expectations" of an ERISA plan). Thus, while the court has sympathy for Crouch's financial difficulties, without some indication that the plain language of the Retirement Plan calls for a different result, the Retirement Plan will be enforced as written and reasonably interpreted by the plan administrator.

Accordingly,

IT IS ORDERED,

1) Defendant's Objections to and Motion to Strike portions of Crouch's Affidavit, (filing no. 25), is denied, and the plaintiff's affidavit was considered in its entirety.

2) Plaintiff's motion for summary judgment, (filing no. 20), is denied;

3)    Defendants' motion for summary judgment, (filing no. 19), is granted;

4)    A judgment in favor of Defendants will be entered separately.

July 2, 2012.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.